| 65 | 485 |
| 113 | 413 |

OWEN CHURCHILL, ADMINISTRATOR OF THE ESTATE OF CHAUNCEY G. POPE, DECEASED, v. STEPHEN SCOTT, GEORGE R. SCOTT, AND NANCY YAW.

*Procuring deed by fraud—Mental incompetency of grantor—Bona fide purchaser—Equity.*

On a review of the testimony in this case, the fraud charged in complainant's bill is held made out, and the decree below, as modified, affirmed.    An examination of the opinion is essential to a correct understanding of the case, to which reference is had.

Appeal from Berrien.    (Smith, J.)    Argued January 21 and 25, 1887.    Decided April 21, 1887.

Bill to set aside a deed of certain real estate for fraud. Complainant and defendants Scott both appeal from decree in favor of complainant.    Decree modified and affirmed. The facts are stated in the opinion.

*Edward Bacon,* for complainant.

*Clapp & Bridgman,* for defendants Scott.

MORSE, J.    During the life-time of Chauncey G. Pope, Owen Churchill, as his guardian, duly appointed by the probate court of Berrien county, filed the bill in this cause against the defendants to set aside a deed of certain real estate in said county for fraud, and to obtain whatever relief the court might find the complainant entitled to.

Pope died during the pendency of the suit, and Churchill, as administrator, now prosecutes.

The bill alleges that Stephen Scott conspired with George R. Scott, his brother, and Nancy Yaw, his mother-in-law, to obtain by fraud and imposition from Chauncey G. Pope, a man of unsound mind, and under the control of Stephen Scott and Mrs. Yaw, a farm of 200 acres situated in the township of Bertrand, county of Berrien, of the value of $20,-000, and having a rental value of $800 per year.

The bill also avers that they succeeded in obtaining such deed in the name of Stephen Scott, and, after such deed was executed, kept the said Pope in their custody and under their control, and also kept and disposed of the money and notes received by said Pope of said Scott for the said farm; and that, to further secure the fraudulent acquisition of such farm, the said Stephen Scott conveyed the same to his brother, George R. Scott, taking in return and recording a mortgage upon the premises for $11,000, and that George R. Scott well knew of and was a party to said fraud.

That said Pope received for his farm but very little consideration, the price, $18,000, being chiefly made out by unsecured notes, the benefit of which said Pope never received; that the said conspirators removed said Pope to the state of Texas, and while there caused him to transfer said notes and all his property to the said Nancy Yaw, for which transfer there was no consideration, save her verbal promise to take care of him during the remainder of his life; that the said Nancy Yaw afterwards removed with Pope to Papinsville, in the state of Missouri,—

"And, being blind, he was there kept in concealment, almost entirely deprived of his liberty, and in great destitution of food and clothing, he being frequently subject to cruel treatment and abuse; but his miserable condition became known to one of the inhabitants there, who ascertained from him the name and postoffice address of said Owen Churchill, and in the summer of 1882 wrote to said Churchill a letter

stating the facts, and thereupon said Churchill went to said village of Papinsville, and said Chauncey G. Pope willingly returned with him to the village of Three Oaks, in Berrien county."

The bill attempts to show the proceedings of the conspirators in the furtherance and accomplishment of the alleged scheme.

The defendant Nancy Yaw made no answer, but the Scotts answered separately.

Stephen Scott denies any conspiracy or scheme against Pope to acquire this farm, but avers that on the fourteenth of February, 1880, while said Pope was of sound mind, and in the possession of all his faculties, he purchased and received a deed of the premises from said Pope for the consideration of $18,000, the full value of the farm at that date; that he paid for said land as follows: promissory notes of Pope to him, for money loaned, of about $4,500, principal and interest; $4,000 in a certificate of deposit in the bank of Buchanan, properly indorsed to Pope; and five promissory notes, signed by Stephen Scott and George Scott, for the balance, about $9,500.

Admits that on the seventh day of March, 1881, he conveyed 160 acres of the land to his brother, George R. Scott, for the consideration of $16,000, and February 28, 1882, he deeded 20 acres to one John Weisgerber for $1,300.

Denies having any part in the removal of Pope to Texas, or any knowledge of the contract made between said Pope and Mrs. Yaw while they were living in that state.

George R. Scott answers that he knows nothing of the alleged fraud or scheme to acquire the property of Pope, and had no knowledge or notice that when Pope deeded the farm to his brother, Stephen, he was in any way incapacitated from doing business, and supposed that he was fully competent to transact business and dispose of his property; that he purchased the 160 acres in perfect good faith, and at the time of such purchase paid in cash for the same the sum of $5,000.

and, in payment of the balance, executed to said Stephen Scott a mortgage upon the land for $11,000, of which sum he had paid $4,000 before the filing of complainant's bill.

Denies any part in the alleged conspiracy, and avers that he had no notice or knowledge of any intention on the part of his brother, Stephen, to purchase, or of Pope to sell, the farm in question, and knew nothing about the transaction until after the land had been deeded.

Upon the pleadings and proofs taken in the cause, the court below decreed, in substance, that from a time prior to the fourteenth day of February, 1880, and ever thereafter until his death, the said Chauncey G. Pope was *non compos mentis;* that the complainant, as administrator, was entitled to the sum of $6,000, and interest thereon at 8 per cent. per annum from February 14, 1880, such principal and interest amounting, at the date of the decree, to $9,120; that said sum was a valid subsisting first lien upon 180 acres of the land; that said lien should have priority as against any conveyances or mortgages made by Stephen or George R. Scott, and all liens or conveyances made since February 14, 1880.

The decree further provides that if said Stephen and George R. Scott shall not pay or cause to be paid to said complainant the said sum of money, with interest as aforesaid, within 60 days after service of a copy of the decree upon defendants' solicitor, then the conveyance from Pope to Stephen Scott, and from Stephen Scott and wife to George R. Scott, and the mortgage from George R. Scott to Stephen Scott, shall be null and void and held for naught as far as said 180 acres of land is concerned; and the five promissory notes of $2,000 each, signed by Stephen Scott and George Scott, his father, purporting to have been given to Pope, shall also be considered as void and held for naught; and that, in case of such default and such nullification of said conveyances, the complainant shall pay to the register in chancery the sum of $2,938 within 30 days after such default, to be paid by said

register to whomsoever may be entitled to the same, as afterwards determined by the court. When such sum of $2,938 is paid to the register, and, upon his certificate of such payment, exhibited to said defendants Stephen and George R. Scott, and demand made for possession of said 180 acres by said administrator, the said land shall be delivered to him by said defendants. In case the sum of $9,120, with interest, is paid to the administrator, the conveyances above mentioned shall stand and remain in full force and effect.

The effect of this decree is to find that the last three notes have not been paid to said Pope, or any one in his behalf, and to declare the same a first lien upon 180 acres of the farm; and, in case the same is not paid, to declare the conveyances void, and provide for the payment to some one of $2,938.

Both parties appeal from this decree.

The complainant insists that the deed from Pope to Stephen Scott should have been set aside, and declared void absolutely, without any condition; that all the other conveyances were in furtherance of the same fraud, and should also have been set aside. He also claims that Pope actually received no consideration for said land, excepting the amount paid one James F. Cross as hereafter mentioned.

It is apparent from the proof that a great fraud was practiced upon Chauncey G. Pope by Nancy Yaw and the defendant Stephen Scott.

Pope was a bachelor, residing in the township of Bertrand. He had been a fair business man as a farmer, and by hard work, and economy bordering on parsimony, had acquired considerable property. Before his mind began to fail he was a self-willed, obstinate man, brooking but little, if any, interference by others in the management of his business.

Nancy Yaw was a widow, with one son, Eastman, and two daughters, named Abbie and Sylvia. Mrs. Yaw, with her son and daughters, lived several years with Pope upon his farm; Mrs. Yaw keeping house for him for wages. Mrs.

Yaw always seemed to exercise more or less influence or control over the mind of Pope, which control increased as his mind weakened from old age and other infirmities. Sylvia Yaw married the defendant Stephen Scott. Through the urgency and influence of Mrs. Yaw, Pope was induced to and did purchase in 1877 a mill property at the village of Dayton, in Berrien county, of one George Rough. He went into partnership with one Torney in the milling business soon thereafter. In this venture he lost money, and became somewhat in debt, which annoyed and harassed him very much. A suit was soon commenced against him by one Wood for damages resulting from flowage, in which suit judgment was rendered against Pope.

Pope was getting infirm and old, his eyesight began to fail, and most of his friends began to discover signs of mental infirmity and weakness. He became childish and irresolute and easily influenced. While in this condition of mind and body, the conveyance of his farm to Stephen Scott took place. There is no doubt that he was influenced to make the sale by the fear that, unless he did so, he would lose his property. He was stimulated in this fear by the acts and words of Mrs. Yaw and Stephen Scott. It was represented to him, among other things, that his property would be eaten up by litigation, and that proceedings would probably be instituted against him for his imprisonment.

It is claimed that on the fourteenth day of February, A. D. 1880, when the transfer was made, that Pope was owing Stephen Scott about $4,000 for moneys advanced to him at different times before the making of the deed. Pope died without giving any testimony, and the evidence of this indebtedness rests entirely with the relatives of Stephen Scott. His wife is the principal witness to prove it, and her evidence is far from being satisfactory.

Scott claims that this indebtedness was applied as a payment on the farm, and it is evident that it was so treated.

He also claims that he paid $4,000 by a certificate of deposit upon a bank in Buchanan. He also executed five notes, of $2,000 each, payable to Pope, or order, signed by himself and his father, George Scott.

It is contended by defendants that Pope had the benefit of this certificate of deposit, but I can find no evidence of his ever having but $2,700 of it.

The certificate is indorsed in blank by George Scott, to whom it was made payable. It was paid February 16, 1880, by the issuing of four certificates of $500 each to Stephen Scott, and the balance in money to him. Three of them appear to have been paid on the twentieth of February, 1880, and are indorsed by Stephen Scott and O. W. Coolidge. The other is indorsed by Stephen Scott alone, and was paid February 24, 1880. The certificates indorsed by Coolidge were probably used by Scott in paying a claim against Pope.

About the time of the transfer of the farm to Stephen Scott, O. W. Coolidge, as attorney for creditors of Pope, commenced an attachment suit in the Berrien circuit court against Pope, and a few days thereafter instituted proceedings against him under the fraudulent-debtor act. A warrant, and the amount of the claims, was put in the hands of Cross, an officer, who proceeded to arrest Pope. To release Pope from arrest, Stephen Scott paid the claims, amounting to about $2,700. This was without doubt paid out of the $4,000 originally deposited in the Buchanan bank. The balance of $1,300 I do not think Pope ever received.

It is shown that the first two notes were paid in some way to H. H. Coolidge, who was acting as the attorney of Pope, and both of said notes bear Pope's indorsement. Whether Pope ever received the money or not, or whether it was applied to pay his debts, is not very clear, but it must, I think, be considered, as far as Scott is concerned, a payment to Pope. There is evidence tending to show that the third note was paid to Mrs. Yaw, and such note has an assignment

upon it to her, purporting to be signed by Pope by making his mark.

In the year 1880, Mrs. Yaw moved to Texas, and took Pope with her. He was induced to go from fear of further criminal prosecution, and remained with her, and under her control, until they found Churchill in Missouri as stated in the bill of complaint.

While he was with her, and completely under her control, and while his whereabouts were unknown to his relatives, she procured from him, without consideration, an assignment of all his property, of which Stephen Scott had knowledge. When Pope was found by Churchill, he was an imbecile, kept in a small room without decent clothing or bedding, and covered by his own filth and excrement. He was kept and confined as one without mercy or kindness would keep a wild beast. He was treated most inhumanly.

I am satisfied that Mrs. Yaw and Stephen Scott deliberately took advantage of this old man's physical infirmities and mental weaknesses to rob him of the greater portion of his property, and that George R. Scott had at least sufficient notice of their acts and intentions to deprive him of any plea of good faith in his purchase, so far at least as Pope failed to receive the proceeds of his sale to Stephen.

It is not easy to do complete equity to the representatives of Pope under the circumstances. The $4,000 alleged to have been owing from him to Stephen Scott at the time of the sale of the farm, and the $4,000 paid to Coolidge, and the $2,700 paid to Cross, ought, we think, to be allowed as payments upon the place, as far as George R. Scott's rights are concerned. He has paid about $9,000 upon his purchase to Stephen. Twenty acres have passed from Stephen Scott to one John Weisgerber, who is a good-faith purchaser.

Stephen Scott could not well complain if we should set aside the deed to him of this farm, and leave him a loser of what he has paid, as he made the payments in order that he

and Mrs. Yaw might swindle Pope out of the balance of the purchase price. But we cannot well do this without affecting and destroying the rights of George R. Scott in the premises. It does not appear that he was a party to the original fraud, or that he has participated in any way in the profits of the subsequent wrongs inflicted upon Pope by his brother and Mrs. Yaw.

The decree of the circuit court for the county of Berrien in chancery is nearly right. It will stand affirmed as modified by us. The $1,300 in the certificate of deposit not received by Pope, or expended for his use, will be added to the $6,000, and the lien thereby increased to the sum of $7,300, with interest on the same at the rate of 8 per cent. per annum from the fourteenth day of February, 1880; said sum to be paid within six months after settlement of decree in this Court. All of said decree relating to the sum of $2,938 will be stricken out of the same; and, in case of the non-payment of said lien as thus increased, as provided in said decree, the said conveyances therein mentioned shall be void and held for naught as to the 180 acres mentioned in such decree, and the said land shall become and be the property of the estate of said Chauncey G. Pope, deceased, forever free and clear from all conveyances, liens, or incumbrances to or by the said Scotts or Nancy Yaw.

The complainant will recover his costs in both courts.

The other Justices concurred.